All right, our final case this morning is number 17-2037, In Re Maatita, Mr. Shapiro. Your honors, if it pleases the court, I'm Stephen Shapiro. I represent the appellant Maatita. This appeal concerns whether or not a Maatita's design patent application is indefinite and not enabling. With respect to enabling, the examiner all but admitted that the invention was enabled by the disclosure. On the appendix, page 71 at the top, he provided four different portions. He wrote, and I'm quoting, on page 71 at the top, and it says, one of ordinary skill could make and use multiple designs that could match an applicant's design. So within the grasp of a person of ordinary skill in the art, which means it was enabled. He provided four, in essence, admitted that these four were enabled. So factually, rather than meet his burden, the examiner actually admitted enablement. What do you understand that the board's ruling would require you to do here to file four separate patent applications? Is that a consequence of it? What the examiner is saying? Well, what the board said. Your honor, I don't think that's exactly what the board said. What our position is, is that there was a single, in essence, a single drawing that had a single inventive. Your position is, I'm just asking you, what does the board decision do to you? I mean, what, obviously, you're able to file a patent application. What are they saying that you should be doing? Filing four separate patent applications? Well, they're saying that we had to narrow our claim. That our claim had to What's wrong with my statement? I'm trying to understand what's going on. Well, I think if the examiner, if the board were correct, we would have to file more than four applications. It might be 50 or something like that. 50 different permutations of whether these different design elements are concave or convex or whatever the three-dimensional aspect is. Well, it wasn't just either whether they're concave, it would be relative depth. So that could be different. I mean, there could be, I mean, he gave four examples, the examiner did, but there could be more permutations. And what would really happen is if we were forced... Is that the problem here? That your design captures this innumerable, infinite number of permutations? Well, I think that's actually very common in design patents. For instance, applicants are allowed to use broken lines. They're allowed to not show the entire article. I mean, there can be every design patent, typically, unless it's completely in solid line in every possible view. What would happen to your case if everything's same except you had another drawing that just simply showed the underlying structure of the design? Well, if it would show the underlying structure in another view, then we've now narrowed our coverage. We've narrowed it significantly. And I think as the director... From 50 to 1? Or from 1,000 to 1? Well, it's basically narrowed us down to one application, one particular design where we might have... In that design, a possedo wouldn't have any problem understanding it, correct? I'm sorry? That one design, a possedo would not have any problem understanding that design. You mean a person... What you're claiming. A person of ordinary skill would... I think you could put in perspectives where somebody skilled in the art would be able to say, yes, that's a particular embodiment. Yes, that's true. And without that underlying structure, a person of ordinary skill in the art would look at that and not know what else exists and would be left to speculate. The patent, the claim wouldn't inform a person of ordinary skill in the art as to the extent of the invention. Your Honor, I don't think that's correct because that would go to the indefiniteness part of the argument. But indefiniteness basically says, compare what's in the patent to what's in, let's say, a shoe bottom. And it's just a visual impression. So all anybody has to do in order to look. And if they have similar visual impression, it's within the scope of the patent. I find this case interesting because of that point right there. So let's say somebody comes along two weeks later after this patent is issued. They have the same design except at the bottom, they have a triangular shape. Would that be an infringing patent? You mean triangular from the view of looking like this? Connecting the sole right there where the design is on the sole of the tennis shoe down to wherever else that sole is glued on or connected to. There's now a, let's say, a triangular shape down there. But what I'm asking is the triangular shape visible from this view? Regardless of the shape, any type of shape, would they be infringing the patent? Well, I think the issue is, does it have the same visual impression? So it would depend on what exactly is it, if it's something that's significant. Because I think when you look at infringement, it's whether it's substantially similar from a visual standpoint. So I think for the purposes of the Matita patent application, what a person would do is look at the bottom, look at the drawing, look at the bottom. Now, if the triangle, instead of you have kind of a curved shape, you have a triangle shape, that probably takes it outside the scope of the patent. But if the triangle isn't visible from this view, there could still be infringement. Under Rubenfield, as I understand it, under design patent law, you can only have one claim. You can have multiple embodiments, but you can't have an application which covers more than one invention. What do you understand the difference to be between an embodiment and an invention? Is that based on overall appearance? Well, I think if you look at the Moore case, the Moore case says that the inventor or the applicant defines his or her invention, which is what Matita did. The definition of his inventive concept is in his drawing. Help me understand what the difference is between claiming multiple embodiments of a single invention and claiming more than one invention. What do you understand in the design patent area to be the difference between those? How do you determine which is which? The rule, I believe, is that if it's the same inventive concept, you can have multiple embodiments. How do you know if it's the same inventive concept? I don't know that there's a hard and fast rule, to be honest, Your Honor, but basically, they would have to be fairly similar. If it's something that takes it outside of the scope of significantly of the first figure embodiment, then the other one would probably be a separate invention. But the issue for Matita was there is only one inventive concept, which is what is demonstrated in his drawing. I think the examiner thought there was more than one inventive concept, right? I think what the examiner was saying is that there could be multiple ways to implement Matita's design. His design is a design for an article, and you could vary the article here and there to maybe make it look different if you were to look at other viewpoints. Which would create different inventions? They wouldn't be different inventions because his invention... No, no, no. Under the examiner's view, they're different inventions, and therefore they have to be separate applications. I think the examiner was basically saying that he could articulate different ways to achieve Matita's invention, because we're now looking at Section 112, and that somebody would have to then select of all these different embodiments what's covered. I thought that he was saying, at the bottom of page 71, he says, well, one embodiment or more may be protected by a single claim. Multiple embodiments may only be presented if they involve a single inventive concept. I thought that he was recognizing the same thing you are, but concluding that the inventive concept here, there are multiple inventive concepts here. Well, I think what the examiner did that was incorrect here is he didn't follow In Ray Moore. What he did was decide for the inventor, what is the scope of the claim? The inventor, Matita, had set forth a drawing that set forth his inventive concept and his claim. Granted, it's broad. It's a broad claim, but that's what he claimed. So the examiner... I don't understand how... I'm just trying to see if there's agreement on the basic law. If you have more than one inventive concept, you've got to have separate applications, right? If there is more than one inventive concept, you would have to have separate applications. Okay, so why is there just a single inventive concept here? Because Matita provided a single drawing that shows his inventive concept. Well, that can't be. Just because somebody submits a single drawing, that it's conclusively established that it's a single inventive concept. Well, that's what he claims. Basically, you would look at it from the top and say, does it look like this? This is the scope. I gave an example, for instance, in utility patent. You could have a claim that says acid, but the fact that it could be citric acid or some other type of acid doesn't mean that it can't cover all the acids. This is just simply a broad claim. It's one inventive concept. In all the cases where there's been... It can't be that just because you file a single drawing, that that automatically means it's a single inventive concept, right? That can't be. Can it? I think it does, Your Honor, because there's only one concept that's presented. In the cases where there's multiple, where these issues come up is when people actually... Every time somebody submits a single drawing and the examiner says, well, you've got to file different applications because this is more than one inventive concept, the answer to that is, well, you can't say that because we had a single drawing. I'm not aware of any case where there's been a single drawing that there's been a finding that there's more than one inventive concept. Do you argue that your claim is a genus claim? In a sense, yes, Your Honor. Because a design patent covers one invention, you can claim it broadly. The cases talk about that. You can take features out. You don't have to include features if you want broader coverage. In the cases where the inventive concept comes up is when somebody shows different embodiments in their application. Then the examiner might look at that and say, you know, I think you have different inventive concepts here, but we only have one. We don't have a single drawing. And I gave examples. This is standard practice in the patent office, where I gave some examples so that you could see what the practice is. And there are patents that show one drawing of shoes, shoe bottoms. There's, I think, one of a light. These are three-dimensional articles, yet the inventive concept, there's just a single drawing and that's acceptable and that's issued as a patent. Okay, you want to save your rebuttal time? Thank you, Your Honor. Thank you, Mr. Shapiro. Mr. Lamarcka? May it please the Court. I think what the office is trying to do here, Your Honor, in making its enablement slash indefinite disrejection is to ensure clarity. As it currently stands with a single- Well, that's hard to achieve in this area. Yes, it is, Your Honor. But here, we have a single two-dimensional drawing is what we've got, a plan view. And when we have a two-dimensional drawing, what it applies to is a three-dimensional design. That's where the problem lies. What Appellant is trying to get- Why is that a problem? Well, because when you're trying to get protection for a design, there's three different basic categories. Category one would be like a print, a picture. It would be on a flat surface like on a t-shirt or on a flat plate. If that's all that Appellant was seeking to claim in his design, it's just a simple print design, there'd be no problem with this drawing. It would be just fine. But when you go to the next category, the configuration category, which is more of a three-dimensional object where the design has an impact on the form of that object, in that category, there's a greater requirement for more disclosure. The reason is- How does it impact the form of the object? Well, he says in his claim, I claim the following design for a shoe sole. We know the shoe sole is necessarily going to be in a three-dimensional form with treads and protrusions and recessed areas. In fact, when the examiner produced examples of how that could possibly be viewed, Appellant agreed that those possible examples would be covered by the scope of that claim. Accordingly, if you want a claim that covers something of that scope, which is in the three-dimensional category of configuration designs, you have to give a disclosure that is adequate for the ordinary artisan to understand what your design is. The problem here- The problem is that there are lots of design patents that are granted for three-dimensional objects that are based on a single drawing, right? On a single drawing, but typically the single drawing gives a perspective view, Your Honor. Let me give you an example. A perspective view of a design for a chair, which is a three-dimensional object. If you have a perspective view, you can see the shapes and the way the design is going to look. If you give someone simply a plan view of a three-dimensional object, and when you're looking down at that plan view, if there are many different ways that the three dimensions can be envisioned, then you have not given a clear understanding of the scope of that claim, and furthermore, you've not enabled an ordinary artisan to make and use it. The observer would be looking at all the different dimensions at one time. In this situation, the observer is only looking at one dimension. That's the sole of the shoe. Does it matter what's beneath the design, the structure? Well, yes, it does. Because when we say beneath the design, it's what's visible. Because if you walk into a shoe store, and I look at a bunch of shoes on the shelf, and I flip them all over, and I look at the soles, what's visible to me? The three-dimensional configuration of that shoe sole. I'm not looking at plan views of all those shoes in the store. So when we talked earlier a little bit about infringement, I think the Supreme Court years ago clarified what that test was, and this court recently clarified it again, is that it's the ordinary observer test. If an ordinary observer walks into a store and looks at all these shoes on the shelf and flips over the soles, what is it that they're going to see? They're going to see a three-dimensional shoe sole. They're not going to see plan views of all those shoe soles. Therefore, when you try to compare this design patent that potentially could issue here... I'm having a hard time here. I'm sorry. No, no, it's my fault. If you flip a shoe over, and you're just looking at the treads, why do you say you're looking at a three-dimensional... I mean, here, all you're looking at, you know, you have these little shapes. When you look at the drawing, I think it's pretty clear what the design is. And if you look at the... If we go back to appendix page four of the board decision, where they reprint the examiner's illustrations of possibilities of ways to envision it, if you see there, the examiner was just giving examples. He's saying, here's four different ways. There are probably hundreds of ways that you could envision it based on that plan view. And if you look at these four different ways, and you saw four different shoe soles like this in the shoe store, they would all look different. They would all create a different visual impression, which is what a design patent is protecting. It's the visual impression given to that ordinary observer that's what they're looking at. And these different configurations that can be imagined is where the problem lies. Because if an ordinary artisan cannot pick up the design patent, look at the drawing, and figure out what the configuration is, but has to imagine hundreds of different possibilities, that's speculation as to what the claim is. So in order to get protection, you have to file hundreds of different patent applications? No, I don't think so. I think what could have been done is a single patent application could have been filed here with a different drawing. A drawing that gives a perspective view or an additional drawing. And yes, it's true. Wouldn't that be just limited then to one embodiment, if you will? Whether you caught an embodiment or inventive concept, it would then be limited to one of these or one other depiction, like what the examiner had. Not exactly, Your Honor. If you came forth with a better drawing, a perspective view, or multiple drawing views of this thing, and the applicant used the solid lines and the dashed lines appropriately, again, the solid lines become the claimed subject matter. The dashed lines become the unclaimed subject matter. Accordingly, you could still disclose multiple indistinct embodiments. But it's true, by definition, if you come in with a perspective view drawing, it is going to be narrower than what they're trying to get here. Tell me what that might look like, because I'm having a hard time envisioning what you're talking about in terms of how you could claim it, cover a lot of different embodiments somehow through the use of dashed lines. Well, that's the whole point. The way design patent law works is if you use these solid lines, that's your claimed subject matter. I understand that, but tell me what the drawing would look like. Well, for example, let's say we were just going to claim this rectangular portion of the lectern. But I mean specifically with respect to the shoe. Yeah, I mean the drawing would definitely show the structure that the way the shoe sole looked, whether these things were protruding or whether they were recessed. Now, that doesn't mean they would have to claim every single line and every single distinct portion of that shoe sole. Nevertheless, you have to give an understanding of the three-dimensional thing that you're trying to get a design patent on. And right now, they haven't done that. Now, it's true, you can control the breadth of your claim through the use of these dashed and solid lines. But nevertheless, that doesn't give you the right to just have uncontrolled breadth, which this claim falls into the category of vagueness, where the breadth becomes so uncontrolled that it's not clear. So the problem is sometimes you're allowed to have a single drawing with a two-dimensional view, which covers multiple embodiments where the embodiments might differ in shape. And what I find puzzling is how am I supposed to distinguish between situations in which you can do that with a single two-dimensional drawing and those in which you can't. Let me read you a quote to help you with that, Your Honor. The examiner cited repeatedly throughout his office action, and the board cited it, there's this old commissioner decision called Salisbury. And unfortunately, there's not a lot of case law in this area. So what the agency relies on and what courts rely on when they have to is these very old commissioner decisions. And there's this Salisbury decision. And if you read what Salisbury says, it's quite interesting. And it talks about the three different categories of articles. You have flat articles, which are flat. And then you have these configuration-type articles, which have a three-dimensional shape. It says, it's recognized that a flat article can generally be sufficiently illustrated by a single view. Likewise, articles of a symmetrical nature are often sufficiently illustrated by a single, well-executed perspective view, since it can be deduced with certainty from one view how the article will appear from the other side. However, with articles that are unsymmetrical and which present different appearances from different points of view, one figure from a single point, however well-executed, is not sufficient for complete disclosure. So here's the problem. If you've got an object that you know is symmetrical, and you know it looks the same in all different angles, it's very easy to say, hey, here's one view, and I'm telling you it looks the same in all different angles, so you only have to provide that view sufficient disclosure. Here, what we have is an unsymmetrical-type article, where these sous-sol features could be in any number of different ways, and as a result, a single view is inadequate to provide sufficient disclosure for this type of design. So that's kind of the test on how you measure, or how an examiner would determine, whether or not the drawings are sufficient. And that principle also pops up in another old... Okay, but take a look at page 15 of the blueprint, and here are other shoe cells that have been granted based on a single flat drawing. So what's the difference between those and this one? Sorry, about page 15 of the blue brief, Your Honor? Yeah. Yeah, these are other shoe cell designs. I can't say for sure if these are perfectly flat with simply just an ornamental design on them, or if they're three-dimensional configurations. It's not entirely clear to me. Whether or not other patents have issued in violation of this principle or not, I can't say. What I can say is we had a flat sole, a perfectly flat surface sole, and all we wanted to do was imprint this design on the bottom of that flat sole, and there were no tread configurations, the drawing would be just fine. But that's not what we got. On page 15, you do have a shoe sole with different configurations, and I believe that all these patents were issued with just one drawing. Right. Well, I don't know because we don't actually have those patents in front of us, whether it's a singular drawing or not. Nevertheless, remember you can also have words in a design patent. If the design patent would have said what we're seeking protection on is simply the flat sole with just the print, no problem. You could do it. But that's not what's happening here. The sole would have to be flat. What was that? The sole would have to be flat. Exactly. Like a tennis sneaker in the old days when they played on clay courts, they had flat soles or grass courts, they had flat soles. And if all you wanted to do was imprint a design on there with no deep depthness or no raised levels, that would be no problem. But what you've got here is a three-dimensional configuration design, and in fact, the examiner confirmed that during the prosecution and even challenged the appellant to say, hey, are all you're seeking is a protection for a print? And that's not what they're seeking because the appellant is... Would it make a difference to your argument if these patents were in fact supported with only one drawing, one figure? It wouldn't make a difference, Your Honor, because even if you could prove to me or the appellant could prove to me that somehow these old patents were issued in violation of this It's there for a good reason. It's consistent with 35 U.S. Code Section 112, and we want this court to give us a decision to make it clear because we have so little law in this area, it's beneficial to us to clarify it. So even if we can find old cases where the office may have issued... Do you claim that this is a genus claim? I don't know that they've ever said it's a genus claim. And if it were, and here's the problem again, if you want to claim multiple embodiments, they have to be indistinct from each other, which means the examiners illustrated three or four examples here, and even these... What does that mean, indistinct from each other? Does that mean... Patently indistinct, Your Honor. Yeah, yeah, but what does that mean? Well, in the design world, we know there's a test of obviousness under the Rosen reference, and the Rosen reference theory would determine whether or not something was obvious or not from something else, and if you couldn't meet that test, they would be indistinct. They would be distinct from each other, and they couldn't be in a single patent application. So it's like the obviousness double patenting standard is the one... Very similar, right. Is that what you're drawing from, with the idea that you couldn't have claims in two different patents drawn to the same inventive concept? As Judge Dyke earlier pointed out, there's this older case called Rubenfeld, and in Rubenfeld, they say, yes, you have to have a single claim in a design patent, and that single claim has to be directed to a single inventive concept, and if you try to put in other claims in that patent application that are distinct, patently distinct, what will happen is there will be an automatic restriction, and it will be restricted out. They have to be filed in a separate application. If you, though, simply come forth with embodiments of the same invention, and they are indistinct, you're permitted to leave those in the same application. So here, the examiner indeed said the examples that he gave, the four or five examples, those are indistinct from each other. In fact, I don't believe during the prosecution that appellant ever disagreed with that, because the board said in their decision they referenced it. Indistinct from each other? Right. Let me show you. No, patently distinct. I thought the theory was that they were patently distinct. Let me take you to page five of the board decision if I'm misquoted. Wait, wait, wait. Am I right? Patently distinct from each other. If I misspoke, I'm sorry. Let me take you to page five of the appendix, APPX5, at the very top. Look at what, it starts on page four and it carries over. Appellant admits on the bottom of page four, appendix page four, that the claim covers multiple embodiments. Then he quotes, as the examiner notes, multiple different embodiments encompassed within the scope. So the appellant admits it's covered. Then it says on page five, the appellant does not refute that the claim covers examiner's various depicted embodiments and does not refute that the covered embodiments may be patently distinct. The examiner made a determination that said, hey, if these were the separate embodiments that you were trying to bring forth in a separate application, the examiner would treat those as distinct and restrict them out. That was never refuted. Applied to determining what's patently distinct here, you say we should apply the obviousness test. What does that mean that the test becomes? I think what happens is when the examiner evaluates the multiple embodiments in an application, he'll say, is A distinct from B? How do I figure that out? We have to apply a patentability distinction test. That's what happens. And the test is? In the design world, it's either anticipated or it's obvious. And if it's neither of those. Okay, but what's the test for obviousness? Well, under the Rosen Doctrine, there's something called the Rosen Reference, which is basically the same as the other reference. And then you have to have either a secondary reference or a reason why the ordinary artist would combine them together. So the point is, in the design world, there is a way to evaluate, just like there is in the utility world, whether or not two things are distinct from each other. But here, the examiner says... Please say again what you understand the test to be. Well, is it patently distinct? Is one thing patently distinct from the other thing? Yeah, but that's not a helpful formulation. Yeah, and it's not... You have to have some way of figuring out what patently distinct means in the design world. Right. And there's an established body of law in design patent law that talks about the doctor of anticipation. That's not patently distinct. And the doctrine of obviousness. They're not patently distinct either. And you would go through those typical established design tests to evaluate... The objection here was not on obviousness. No. Right. And really... Why would you apply an obviousness test? The only reason that would ever come up is if we were trying to figure out whether two drawings that were submitted in an application were distinct from each other. That's the only reason. Here, what we're talking about here is before that. We haven't even reached that point. We've got a single drawing, not multiple drawings, one drawing... Let's say you have two drawings. One is a size seven and one is a size nine. Are those patently distinct? Well, the examiner would have to look at the drawings and just a difference in size. A single drawing? I mean, I couldn't say whether just a difference in size would be enough. They would have to run it through the patentable distinctness evaluation to determine... What is that test? Well, that's what I was trying to explain earlier. I know. What I was trying to explain earlier, Your Honor, is patentable... We really need your help. I mean, there's not a lot of law in this area. There's not. No. There's not. But really, patentable distinctness is really not even an issue on the table in this case. So it was never briefed. It's never part of it. But what I'm trying to explain is if there are multiple drawings in a single design application, there has to be a determination made on whether or not they're distinct from each other. And if they are, they get restricted out under the mandatory restriction. That doesn't apply if you only have one drawing. Exactly. None of that applies here. What we've got here is a single drawing. The single drawing is being evaluated under 35 U.S. Code 112. And the examiner has said, Hey, because I can imagine many, many, many possible configurations in the three dimensions from your single two-dimensional drawing, that's a problem. And because that's a problem and it requires conjecture or guessing, therefore, it fails the enablement and indefinite distinctness test. With a couple of these other figures that are in here, wouldn't the observer look at this and say, Well, okay, I understand these three configurations, but I can imagine a whole lot more. Well, I think that's the whole point. We're trying to get the patent. If the patent issues, what the office wants is let's nail it down. What is the thing that you're claiming? We don't want to guess that there's 100. We want to know what it is that you're claiming. What is your design? What is the visual impression that you're protecting in the three-dimensional configuration context? And if you can make that clear from your drawing, no problem. I thought there was an additional point, which does get into this, whether it's patentably distinct or a different inventing concept, which is I hear your adversary saying, Wait, you just look at it from the plan view. You turn it over and look at it from that view. And then you would be able to determine, regardless of the three-dimensional aspect, whether it meets that design or not. And I thought that one of the responses was, No, that wouldn't work because there'd be so many different possibilities, and they wouldn't be patentably distinct. And you can only have your patent directed to a single inventive concept. So am I correct in understanding that that is part of the argument that's being made here? I think the problem is if you're in the infringement world, let's say the patent issue just like this with a single two-dimensional drawing, the problem would be is we want to take that patent drawing and we want to compare that to the alleged infringing device, an alleged infringing article. And the problem would be we're now comparing a two-dimensional plan view to a three-dimensional object. But since there are all these possibilities that could be alleged infringing devices, it would be very difficult for us to nail down what's infringing and what's not infringing. All we would be looking at is this plan view. So the ordinary observer test, they'd have a very difficult time of applying that test in the infringement context without an adequate disclosure. I think that's what I was trying to say. I apologize if I've been talking a little bit too quickly. There's a lot of information here. And if I was a little too fast there and I misstated, I apologize. I don't know if that helps. It's kind of the policy behind why we need to be somewhat scrutinizing with 112. Because if we have clarity before the patent issues, then there's not a problem later when the patent gets enforced. That's what we're trying to do. And I think the office is acting, and not only that, we have to make sure the claim is enabled, not just for a part of the claim, but for the full scope of the claim. Because that's the legal standard that we have to go by. Here, an appellant might have pointed out, oh, one of these drawings, and he says the examiner admitted that they're enabled. The examiner admitted by showing these examples that it's enabled. Well, that's not an admission. That's a demonstration by the examiner how difficult it is to nail down what the visual impression is because there's so many of them. And so I think that's it. Thank you very much. Thank you, Your Honors. I'd just like to point out that with regard to those four examples, they're not at a plan view. They're at a different view. What the examiner did was add in limitations that are not part of our claim. It's a genus claim. Granted, it's broad. But it's very simple for someone to take the bottom of a shoe, this drawing, and look at the visual impression and decide whether or not there's infringement or this falls within the scope. Now, with regard to enablement, and I'll just say this is a Section 112 case. The one thing that Pelley hasn't implied are the actual standards of Section 112. He cites, for instance, he quoted from Salisbury. Salisbury is an old case that was reversed. It's inconsistent with Zahn because what the basis of Salisbury was is that the article wasn't shown completely. It was a car. There was one drawing. You can't see the back of the car in the drawing. Therefore, they said that Salisbury said it's invalid because it doesn't have a complete disclosure of the article. But as Zahn made clear, it's a design for an article. We're not designing an article. And what the examiner, the board, and Pelley are trying to do are add limitations that are not in our claim. So, yes, it's broad. It's a genus. But from an indefinite standpoint, it's very simple to make a decision as to whether or not there's an infringement. Okay, Mr. Shapiro, I think we're out of time. Thank you. Oh, sorry. I may be disappointed, but that's the way it is. Didn't realize I had six minutes. I get that, Your Honor. The panel would like both sides to provide us with supplemental briefs on the issue of what the standard is for determining when there are patently distinct designs. And why don't we say 15 pages aside and two weeks from now? Is that feasible? Yes, Your Honor. Thank you. Thank you. Thank both sides. You want to limit the question in situations where there's a single drawing? I don't want to limit it. But I think in doing the briefing, focus particularly on situations where there's a single drawing and we're trying to figure out whether it's patently distinct. Don't limit it to that. Thank you, Your Honor. Okay, thank you. Thank both sides. The case is submitted. That concludes our session for this morning.